# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| MARK A. WALDROP, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Case No. 4:16-cv-235-HLM |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| COMMUNITY HEALTH SYSTEMS, INC., | ) |
| | ) |
|    Defendant. | ) |

## AMENDED COMPLAINT

Plaintiff Mark A. Waldrop (hereinafter "Mr. Waldrop"), by and through counsel and pursuant to Federal Rules of Civil Procedure 7 through 11 and 15, states as follows for his cause of action against Defendant:

1.   Mr. Waldrop is an individual and resident of Hamilton County, Tennessee.

2.   Mr. Waldrop is a citizen and domiciliary of Tennessee.

3.   Defendant is a Georgia nonprofit corporation having a principal office located at 213 Third Street, Macon, Georgia 31201 and may be served with process through Defendant's registered agent Angela Hammack at 213 Third Street, Macon, Georgia 31201.

1

4. Defendant is not incorporated in the State of Tennessee and does not have a principal place of business in the State of Tennessee.

5. Defendant is a citizen of the State of Georgia.

6. The Court has subject matter jurisdiction over Mr. Waldrop's claims under 28 U.S.C. § 1332 because Mr. Waldrop and Defendant are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. The Court has jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1) because Defendant is deemed to be a resident of the State of Georgia.

8. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Waldrop's claims occurred in Whitfield County, Georgia.

9. As of June 20, 2006, Mr. Waldrop and Defendant entered into the Employment Agreement of Mark A. Waldrop (hereinafter "Employment Agreement").

10. The Employment Agreement was amended and restated as of January 1, 2009.

11. A true and exact copy of the amended and restated Employment

Agreement as of January 1, 2009 is attached hereto as *Exhibit 1*.

13. Under Paragraph 1 of the Employment Agreement, Mr. Waldrop agreed to "serve as the Executive Vice President, Integration Services" for Defendant.

13. Section 2.1 of the Employment Agreement provides:

Unless earlier terminated pursuant to Sections 2.2-2.6 below, the initial term of [Mr. Waldrop]'s employment under this [Employment] Agreement began on January 1, 2006 and shall continue until December 31, 2006 (the "Initial Term"); provided that such Initial Term shall be automatically extended for additional periods of one (1) year commencing on January 1, 2007 and each anniversary thereof (such period or periods, the "Renewal Term"), unless either party shall have given notice to the other party at least thirty (30) days prior to the end of the Initial Term or the applicable Renewal Term (as the case may be) that such party does not desire to extend the term of this [Employment] Agreement, in which event, the employment would terminate on December 31 of the Initial Term or applicable Renewal Term (as the case may be) (the Initial Term and the Renewal Term or Terms, if applicable, collectively, the "Term").

14. Section 2.4 of the Employment Agreement provides:

[Defendant] may terminate [Mr. Waldrop]'s employment hereunder for Cause upon prior written notice of termination to [Mr. Waldrop] with such Cause being specific in such notice. As used herein, "Cause" shall mean (i) [Mr. Waldrop]'s act or acts or omission or omissions amounting to gross negligence or willful misconduct which are detrimental to [Defendant] or its reputation; (ii) [Mr. Waldrop]'s conviction of, pleading guilty to, or confessing to any felony; or (iii) [Mr. Waldrop]'s failure to observe or perform any material covenant, condition, or provision of this [Employment] Agreement or of [Defendant]'s written policies, and when such failure is capable of remedy, such failure is not remedied within 30 days after notice of such

failure is given to [Mr. Waldrop] by [Defendant].

15.     Section 2.5 of the Employment Agreement provides:

    (a)    [Defendant] may terminate [Mr. Waldrop]'s employment hereunder without Cause by giving [Mr. Waldrop] 30 days' prior written notice thereof.

    (b)    In the event of [Defendant]'s termination of employment without Cause, as severance pay [Defendant] shall, subject to Section 2.8 below, continue to pay the Salary to [Mr. Waldrop] for (1) year. Such severance pay shall be payable in equal installments and in accordance with the regularly recurring pay periods established by [Defendant] but in no even less frequently than monthly.

16.     Section 2.7 of the Employment Agreement provides:

Upon termination of employment, all obligations of [Defendant] under this [Employment] Agreement shall terminate except with respect to (i) payment of compensation earned to the date of termination, (ii) any severance payments required to be paid under Section 2 of this [Employment] Agreement, (iii) reimbursement of expenses incurred prior to the date of termination of employment to which [Mr. Waldrop] would have been entitled under this [Employment] Agreement, and (iv) any unpaid vested amounts or benefits to which [Mr. Waldrop] would have been entitled as of the date of [Mr. Waldrop]'s date of termination pursuant to any benefit plan.  In addition to the foregoing, (a) upon termination of employment pursuant to Section 2.5 and for the duration of the severance period set forth in Section 2.5(b), [Mr. Waldrop] shall be provided benefits, at no cost to [Mr. Waldrop], substantially similar to the employee benefits being provided to [Mr. Waldrop] at the time of such termination; and (b) upon termination of employment for any other reason, or immediately following the severance period set forth in Section 2.5(b), as applicable, [Mr. Waldrop] shall have the option to purchase continuation coverage as to any [Defendant]-provided medical, dental or vision plan in which he participates, such option being in addition to any legally-mandated rights [Mr. Waldrop] may have to COBRA continuance coverage as to any

[Defendant]-provided medical, dental or vision plan in which [Mr. Waldrop] participates.

17. Section 3 of the Employment Agreement provides:

For all services which [Mr. Waldrop] renders to [Defendant] during the Term, [Mr. Waldrop] shall receive from [Defendant] an annual salary as of January 1, 2009 (the "Salary") of $562,680, less normal withholdings. The Salary shall be paid to [Mr. Waldrop] on the regularly recurring pay periods established by [Defendant], but in no event less frequently than monthly. The amount of the Salary shall be reviewed annually by the Board of Directors of [Defendant] for, at the discretion of the Board of Directors of [Defendant], possible increases in such amount.

18. Section 6.1 of the Employment Agreement provides, in relevant part:

    (a) "Business" shall mean: (a) the provision of rehabilitative therapy, medical and personal support services, home care, medical or pharmaceutical supplies or case management services; (b) the leasing, ownership, management or operation of nursing facilities or assisted living facilities ("assisted living facilities" being known under Section 31-712 of the Official Code of Georgia Annotated as "personal care homes"); (c) the operation and management of a health care cooperative; (d) the operation and management of one or more captive insurance companies; and (e) other activities or provision of products or services being conducted or provided, as applicable, or which [Defendant] has active plans to pursue, at the time of termination of [Mr. Waldrop]'s employment.

    (b) "Competing Business" shall mean any person or entity which engages in a business substantially the same as the Business or any portion thereof.

. . .

    (f) "Territory" shall mean the State of Georgia.

19. Section 6.4 of the Employment Agreement provides:

Except as set forth in <u>Exhibit 6.4</u> attached hereto, [Mr. Waldrop] further covenants and agrees that, during the Term and for a period of twenty four (24) months thereafter, [Mr. Waldrop] shall not, without [Defendant]'s prior written consent, serve as an operations manager, an executive vice president of integration services or in any other position requiring [Mr. Waldrop] to perform some or all of the duties that [Mr. Waldrop] was performing for [Defendant] at the time this [Employment] Agreement is terminated in the Territory for any Competing Business.

20.   Exhibit 6.4 of the Employment Agreement provides:

   1.   Section 6.4 of this [Employment] Agreement shall not prohibit [Mr. Waldrop] from the continued ownership, operation or use of any real or personal property owned by [Mr. Waldrop] at the time of termination of [Mr. Waldrop's] employment hereunder.

   2.   In the event that [Mr. Waldrop]'s employment is terminated by [Defendant] without Cause under Section 2.5 of this [Employment] Agreement, then Section 6.4 of this [Employment] Agreement shall automatically terminate.

21.   Section 17 of the Employment Agreement provides, "If either party to this [Employment] Agreement breaches any terms hereof, that party shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorney's fees, incurred by that party in enforcing the terms of this [Employment] Agreement."

22.   During Mr. Waldrop's employment with Defendant under the Employment Agreement, Mr. Waldrop worked out of Defendant's office in Dalton, Whitfield County, Georgia.

23. From and after January 1, 2009, Defendant's Board of Directors raised the amount of Mr. Waldrop's salary on several occasions.

24. Defendant eventually promoted Mr. Waldrop to the position of chief operating officer.

25. As of June 28, 2016, Mr. Waldrop's salary was $1,045,665.17 per year.

26. As of June 28, 2016, Mr. Waldrop had accumulated eighteen days in unpaid leave benefits in the amount of $72,392.20.

27. Joseph A. Wall (hereinafter "Mr. Wall") is one of Defendant's representatives.

28. On June 28, 2016, Mr. Wall invited Mr. Waldrop to a meeting in Atlanta, Georgia.

29. At the June 28, 2016 meeting, Mr. Wall advised Mr. Waldrop that Mr. Waldrop's employment with Defendant was terminated immediately.

30. None of Defendant's representatives gave Mr. Waldrop an oral explanation or reason for Mr. Waldrop's termination on June 28, 2016.

31. None of Defendant's representatives gave Mr. Waldrop a written explanation or reason for Mr. Waldrop's termination on June 28, 2016.

32. On July 1, 2016, Mr. Waldrop sent a letter (hereinafter "Waldrop Let-

ter") to Wall and Defendant's counsel.

33. A true and exact copy of the Waldrop Letter is attached hereto as *Exhibit 2*.

34. In the Waldrop Letter, Mr. Waldrop requests an explanation for Defendant's termination of Mr. Waldrop's employment.

35. In response, Defendant's counsel sent a letter ("Defendant Letter") to Mr. Waldrop on July 6, 2016.

36. A true and exact copy of the Defendant Letter is attached hereto as *Exhibit 3*.

37. The Defendant Letter confirms that Defendant terminated Mr. Waldrop's employment "effectively immediately on June 28, 2016" and offers to provide Mr. Waldrop with separation benefits.

38. The separation benefits offered in the Defendant Letter are less than the severance benefits for a termination without cause under the amended and restated Employment Agreement.

39. The Defendant Letter does not state any "Cause" or disclose the reason for Mr. Waldrop's termination.

40. Defendant did not provide to Mr. Waldrop any written notice of the cause for Mr. Waldrop's termination prior to the filing of this lawsuit.

## COUNT ONE:  BREACH OF CONTRACT

41. Mr. Waldrop repeats the allegations in Paragraphs 1 through 40 as if fully realleged in this Paragraph.

42. The Employment Agreement constitutes an enforceable contract between Mr. Waldrop and Defendant.

43. By failing to provide prior written notice of Mr. Waldrop's termination, Defendant has breached Sections 2.4 and 2.5(a) of the Employment Agreement.

44. By failing to provide prior written notice of any cause for the termination of Mr. Waldrop's employment, Defendant has breached Section 2.4 of the Employment Agreement.

45. By failing to provide prior written notice and an opportunity for Mr. Waldrop to remedy any cause for the termination of Mr. Waldrop's employment, Defendant has breached Section 2.4 of the Employment Agreement.

46. As a direct and proximate cause of Defendant's breaches of the Employment Agreement, Mr. Waldrop has been and continues to be damaged.

47. Because the termination of Mr. Waldrop's employment was without prior written notice, and without prior written notice with Cause being specified in such notice, Mr. Waldrop is entitled to the following damages under Section 2.7 of

the Employment Agreement: (i) any unpaid salary through June 28, 2016; (ii) $1,045,665.17 in salary payments for one year to be paid no less frequently than monthly; (iii) any unreimbursed expenses incurred by Mr. Waldrop prior to June 28, 2016; (iii) eighteen days in unpaid leave benefits totaling $72,392.20; and (iv) benefits, at no cost to Mr. Waldrop, substantially similar to the employee benefits being provided to Mr. Waldrop as of June 28, 2016, including, but not limited to, medical benefits, dental benefits, vision benefits, disability and life insurance, and long-term health care insurance.

48. As the non-defaulting party under the Employment Agreement, Mr. Waldrop is also entitled to costs, expenses, and attorney's fees under Section 17 of the Employment Agreement.

## COUNT TWO: DECLARATORY JUDGMENT

49. Mr. Waldrop repeats the allegations in Paragraphs 1 through 48 as if fully realleged in this Paragraph.

50. As evidenced by the Waldrop Letter and Defendant Letter, there is an actual controversy regarding Mr. Waldrop's rights under the Employment Agreement pursuant to 28 U.S.C. § 2201(a).

51. In light of the terms of the Employment Agreement and contents of the Waldrop Letter and Defendant Letter, Mr. Waldrop requests that the Court en-

ter a declaratory judgment confirming that Defendant's termination of Mr. Waldrop was without prior written notice of termination and without prior written notice of Cause under Section 2.5 of the Employment Agreement.

52. Since Defendant's termination of Mr. Waldrop was without cause, the Court should declare that: (i) the noncompetition covenant under Section 6.4 is automatically terminated as of June 28, 2016 in accordance with Paragraph 2 of Exhibit 6.4 to the Employment Agreement; and (ii) Mr. Waldrop is entitled to any other rights arising out of Mr. Waldrop's termination without prior written notice and prior written notice of cause under the Employment Agreement.

WHEREFORE, in light of the foregoing, Mr. Waldrop respectfully requests that the Court:

1. Issue process and cause process to be served on Defendant;

2. Enter a judgment in favor of Mr. Waldrop and against Defendant for any unpaid salary payments through June 28, 2016 under Section 2.5 of the Employment Agreement;

3. Enter a judgment in favor of Mr. Waldrop and against Defendant for $1,045,665.17 in salary payments for one year to be paid no less frequently than monthly under Section 2.5 of the Employment Agreement;

4. Enter a judgment in favor of Mr. Waldrop and against Defendant for

any unreimbursed expenses incurred by Mr. Waldrop prior to June 28, 2016 under Section 2.5 of the Employment Agreement;

5. Enter a judgment in favor of Mr. Waldrop and against Defendant for eighteen days of unpaid leave benefits in the amount of $72,392.20 under Section 2.5 of the Employment Agreement;

6. Enter a judgment in favor of Mr. Waldrop and against Defendant for benefits substantially equivalent to the employee benefits being provided to Mr. Waldrop as of June 28, 2016 under Section 2.5 of the Employment Agreement, at no cost to Mr. Waldrop, substantially similar to the employee benefits being provided to Mr. Waldrop as of June 28, 2016, including, but not limited to, medical benefits, dental benefits, vision benefits, disability and life insurance, and long-term health care insurance;

7. Declare that Defendant's termination of Mr. Waldrop was without cause under Section 2.5 of the Employment Agreement;

8. Declare that the noncompetition covenant in Section 6.4 of the Employment Agreement was automatically terminated on June 28, 2016 pursuant to the provisions of Exhibit 6.4 of the Employment Agreement;

9. Declare that Mr. Waldrop is entitled to all rights arising out of Mr. Waldrop's termination without cause under the Employment Agreement;

10. Award Mr. Waldrop costs, expenses, and attorney's fees under Section 17 of the Employment Agreement;

11. Tax all costs to Defendant; and

12. Grant Mr. Waldrop such further relief that the Court deems equitable and just.

> Respectfully submitted,
>
> GEARHISER, PETERS, ELLIOTT & CANNON, PLLC
>
> By: s/Gary L. Henry
> R. Wayne Peters (Ga. Bar #573700)
> (wpeters@gearhiserpeters.com)
> Gary L. Henry (Ga. Bar #107821)
> (ghenry@gearhiserpeters.com)
> 320 McCallie Avenue
> Chattanooga, Tennessee 37402
> Telephone: (423) 756-5171
> Facsimile: (423) 266-1605
> *Attorneys for Plaintiff Mark A. Waldrop*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this document has been prepared with one of the font and point selections approved by the Court in Civil Local Rule of Practice 5.1B.

> GEARHISER, PETERS, ELLIOTT & CANNON, PLLC
>
> By:s/Gary L. Henry

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties or their attorneys of record as follows:

>Harold T. Daniel, Jr., Esq.
>Latoya Brisbane, Esq.
>Holland & Knight LLP
>Regions Plaza, Suite 1800
>1180 West Peachtree Street
>Atlanta, Georgia 30309

This the  12th  day of December, 2016.

>GEARHISER, PETERS, ELLIOTT &
>     CANNON, PLLC
>
>By: s/Gary L. Henry